IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSS BOHLKE and ISC, INC., <br><br>   Plaintiffs, <br><br>   v. <br><br> STATE OF CALIFORNIA et al., <br><br>   Defendants. | No. C-06-1667 MMC <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS; VACATING HEARING** <br><br> (Docket No. 10) |

    Before the Court is the motion filed July 11, 2006 by defendants State of California, Business, Transportation and Housing Agency of the State of California, and Department of Motor Vehicles of the State of California, seeking dismissal, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, of the seventh cause of action asserted against them by plaintiffs Russ Bohlke and ISC, Inc.  Plaintiffs have filed opposition to the motion; defendants have filed a reply.  Having reviewed the papers filed in support of and in opposition to the motion, the Court finds the matter appropriate for decision without oral argument, see Civil L.R. 7-1(b), VACATES the August 18, 2006 hearing, and rules as follows.

## BACKGROUND

    The instant action is a purported class action on behalf of a class consisting of "all persons in California with mobility, visual, auditory, and other physical disabilities who have

been denied the right to full and equal access to, and use and enjoyment of[,] their local and convenient DMV stations and to their driving privileges due to" assertedly discriminatory policies and barriers. (See Second Amended Complaint ("SAC") ¶ 11.) Plaintiffs assert causes of action for violation of (1) Title II of the Americans With Disabilities Act of 1990 ("ADA"); (2) § 504 of the Rehabilitation Act of 1973; (3) "California's disabled access statutes," including California Government Code §§ 4450 et seq., California Health & Safety Code §§ 19955 et seq., and California Vehicle Code §§ 14100 et seq., (4) California Government Code §§ 4450 et seq.; (5) California Civil Code §§ 54, 54.1, and 55; (6) California Civil Code §§ 54(c) and 54.1(d); (7) California Civil Code § 51 ("Unruh Act"), and (8) California Government Code § 11135.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) cannot be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).

Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any material beyond the pleadings. See Hal Roach Studios, Inc. v. Richard Feiner And Co., Inc., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). Material that is properly submitted as part of the complaint, however, may be considered. See id. Documents whose contents are alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading, also may be considered. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). In addition, the Court may consider any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," regardless of whether the document is referred to in the complaint. See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998). Finally, the Court may consider matters that are subject to judicial notice. See Mack v. South Bay Beer Distributors, Inc., 798 F.2d

1279, 1282 (9th Cir. 1986).

In analyzing a motion to dismiss, the Court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). The Court may disregard factual allegations if such allegations are contradicted by the facts established by reference to exhibits attached to the complaint. See Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). Conclusory allegations, unsupported by the facts alleged, need not be accepted as true. See Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992).

## DISCUSSION

As noted, defendants move to dismiss only the seventh cause of action, pursuant to which plaintiffs seek relief pursuant to the Unruh Act. Specifically, plaintiffs allege that each asserted violation of the ADA is also a violation of the Unruh Act, pursuant to California Civil Code § 51(f). (See SAC ¶ 85.) Defendants move to dismiss plaintiffs' Unruh Act claim on the ground the State of California and its agencies are not "business establishments" and, consequently, are not subject to liability under the Unruh Act.

The Unruh Act provides that "[a]ll persons within the jurisdiction of [California] are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." See Cal. Civ. Code § 51(b).[1] In 1992, the Unruh Act was amended to provide that "a violation of the right of any individual under the [ADA] shall also constitute a violation" of the Unruh Act. See Cal. Civ. Code § 51(f).[2] The

---

[1] Pursuant to California Civil Code § 52(a), "[w]hoever" violates the Unruh Act "is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto." See Cal. Civ. Code § 52(a).

[2] By adopting § 51(f), "the California Legislature intended to incorporate into the Unruh Act . . . only those provisions of the ADA germane to the original scope" of the Unruh Act. See Bass v. County of Butte, Nos. 04-16705, 04-17286, slip op. at 9705 (9th Cir. Aug.

3

Unruh Act "works to ensure that all persons receive the full accommodations of any business within California, regardless of the person's disabilities." See Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1050 (9th Cir.2000).

The Unruh Act amended an earlier California statute that prohibited arbitrary discrimination in "public accommodations." See Isbister v. Boys Club of Santa Cruz, Inc., 40 Cal. 3d 72, 78 (1985). The Unruh Act expanded the reach of the prior statute "from common carriers and places of public accommodation and recreation, e.g., railroads, hotels, restaurants, theaters, and the like, to include 'all business establishments of every kind whatsoever.'" See id. (emphasis and citation omitted). "By its use of the emphatic words 'all' and 'of every kind whatsoever,' the Legislature intended that the phrase 'business establishments' be interpreted in the broadest sense reasonably possible." See id. (internal quotation and citation omitted).

Although California courts have avoided setting forth a rigid test for determining whether an entity is a "business establishment," the California Supreme Court has provided some general guidance. In Burks v. Poppy Construction Company, 57 Cal. 2d 463 (1962), the California Supreme Court explained that the definition of "business," within the meaning of the Unruh Act, "embraces everything about which one can be employed, and it is often synonymous with 'calling, occupation, or trade, engaged in for the purpose of making a livelihood or gain,'" and that an "establishment" includes "not only a fixed location," but also "a permanent commercial force or organization or a permanent settled position (as in life or business)." See id. at 468 (holding construction company to be "business establishment"). Subsequently, in O'Connor v. Village Green Owners Ass'n., 33 Cal. 3d 790 (1983), the California Supreme Court held that non-profit organizations could be "business establishments" within the meaning of the Unruh Act, noting that "hospitals are often nonprofit organizations and they are clearly business establishments to the extent that they employ a vast array of persons, care for an extensive physical plant and charge substantial

---

15, 2006) (rejecting argument that § 51(f) incorporates ADA's employment discrimination provisions into Unruh Act).

1 fees to those who use the facilities." See id. at 796 (finding non-profit condominium owners
2 association had sufficient "businesslike attributes" to fall within Unruh Act's definition of
3 "business establishments"). In Warfield v. Peninsula Golf & Country Club, 10 Cal. 4th 594
4 (1995), the Supreme Court held that although private social clubs generally fall outside the
5 scope of the Unruh Act, the club at issue therein was a "business establishment" because it
6 "derive[d] a significant amount of revenue, as well as indirect benefit, from the use of its
7 facilities, and the purchase of goods and services on its premises, by persons who are not
8 members of the club." See id. at 599 (emphasis in original). The Supreme Court held that
9 the Unruh Act "firmly established the right of all persons to nondiscriminatory treatment by
10 establishments that engage in business transactions with the public." See id. at 618. More
11 recently, in Curran v. Mount Diablo Council of the Boy Scouts of America, 17 Cal. 4th 670
12 (1998), the Supreme Court explained that an entity may be a business establishment for
13 some purposes but not others. See id. at 700 (holding Unruh Act had no application to Boy
14 Scouts' membership policies because "[u]nlike those involved in Warfield, the business
15 transactions with nonmembers engaged in by the Boy Scouts do not involve the sale of
16 access to the basic activities or services offered by the organization"; noting "we have no
17 doubt that the [Unruh Act] would apply to, and would prohibit discrimination in, the actual
18 business transactions with nonmembers engaged in by the Boy Scouts in its retail stores
19 and elsewhere").

20       The parties have cited no controlling authority on the issue of whether the state and
21 its agencies ever may be considered to be operating a "business establishment" within the
22 meaning of the Unruh Act, and the conclusions reached by district courts have differed
23 depending on the particular state function at issue. For example, state prisons have been
24 held not to be "business establishments" within the meaning of the Unruh Act "because
25 prisoners are not engaged in a calling, occupation or trade for purposes of making a
26 livelihood or gain" but, rather, "are incarcerated by the state because of crimes which they
27 have committed." See Taormina v. California Department of Corrections, 946 F. Supp.
28 829, 833-34 (S.D. Cal. 1996); Gaston v. Colio, 883 F. Supp. 508, 510 (S.D. Cal 1995).

1 Relying on Taormina, a California Court of Appeal has held, without discussion, that the
2 state Department of Insurance does not act as a "business establishment" within the
3 meaning of the Unruh Act when it adopts regulations.  See Spanish Speaking Citizens'
4 Foundation, Inc. v. Low, 85 Cal. App. 4th 1179, 1240 (2000).  In none of the above-
5 referenced opinions did the court hold, however, that the state and its agencies can never
6 be liable under the Unruh Act.  Indeed, district courts have held that public schools are
7 "business establishments" within the meaning of the Unruh Act; as one court noted, "[t]he
8 original version of the bill which became the Unruh Act extended its antidiscriminatory
9 provisions to 'all public or private groups, organizations, associations, business
10 establishments, schools, and public facilities" and "[l]ater versions dropped all the specific
11 enumerations except 'business establishments' but added to the latter phrase the modifying
12 words 'of every kind whatsoever.'"  See Sullivan v. Vallejo City Unified School District, 731
13 F. Supp. 947, 952 (E.D. Cal. 1990) (emphases added); see also Nicole M. v. Martinez
14 Unified School District, 964 F. Supp. 1369 (N.D. Cal. 1997) (following Sullivan).

15       This Court finds the DMV qualifies as a business establishment for the purposes of
16 the Unruh Act.  Unlike state prisons, the DMV's services are available to members of the
17 public, who voluntarily visit the DMV for the purposes of obtaining drivers' licenses and
18 related services.  Indeed, the daily business transactions between the DMV and members
19 of the public place the DMV squarely within the definition of a business establishment.
20 See, e.g., Warfield, 10 Cal. 4th at 618 (noting Unruh Act "firmly established the right of all
21 persons to nondiscriminatory treatment by establishments that engage in business
22 transactions with the public").  Defendants submit no authority to the contrary.[3]

23

24       [3] Sacramento Municipal Utility District v. County of Solano, 54 Cal. App. 4th 1163 (1997), cited by defendants, is distinguishable.  There, the Court of Appeal, relying on the
25 "well-settled rule of statutory construction that absent express language to the contrary, government entities are excluded from the operation of general statutory provisions which
26 implicate the exercise of sovereign powers," held a county lacked authority to tax a municipal power plant under a tax code provision authorizing counties to tax "every kind of
27 lawful business conducted in the county."  See id. at 1167.  Defendants submit no authority, however, suggesting the "exercise of sovereign powers" is implicated by the Unruh Act's
28 prohibition against discrimination against disabled persons.  Where "no impairment of sovereign powers would result, the reason underlying the rule of construction ceases to

6

**CONCLUSION**

For the reasons set forth above, the Court hereby DENIES defendants' motion to dismiss.

This order terminates Docket No. 10.

**IT IS SO ORDERED.**

Dated: August 15, 2006

MAXINE M. CHESNEY
United States District Judge

---

exist and the Legislature may properly be held to have intended that the statute apply to governmental bodies even though it used general statutory language only." See Churchill v. Parnell, 170 Cal. App. 3d 1094, 1098 (1985) (internal quotation and citations omitted).